JAMES C. and CARLYDIA BERRY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Berry v. Commissioner
Docket No. 23782-88
United States Tax Court
T.C. Memo 1990-646; 1990 Tax Ct. Memo LEXIS 738; 60 T.C.M. (CCH) 1499; T.C.M. (RIA) 90646; December 27, 1990, Filed *738 Decision will be entered for the respondent. Petitioners were taxpayers in the refund case of Berry v. United States, an unreported District Court opinion, affd. without published opinion 767 F.2d 919 (6th Cir. 1985). The sole issue, the parties, the facts, and the legal principles in that case are the same as in this case. Held: Petitioners are collaterally estopped to deny that capital is a material income-producing factor in the operation of Mr. Berry's business during the taxable years 1977 and 1978. Therefore, petitioners' earned income from the business and from partnerships for purposes of computing the maximum tax in 1977 and 1978 is limited to 30 percent of petitioners' net income from these activities John P. Konvalinka, for the petitioners. John W. Sheffield, III, for the respondent. WHITAKER, Judge. WHITAKER
*2144 MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies in petitioners' 1977 and 1978 Federal income tax returns in the amounts of $ 74,569.34 and $ 73,783.94, respectively. The issues for decision are whether petitioner is precluded from denying that capital is a material income-producing factor in Mr. Berry's parking facilities business for the years in issue under the principle of collateral estoppel; and if collateral estoppel is not applicable, whether capital is a material income-producing factor in the production of petitioners' income from Mr. Berry's business for the years in issue within the meaning of sections 911(b) [1] and 1348. We hold that petitioner is precluded from denying that capital is a material income-producing factor in Mr. Berry's business for the years in issue under the doctrine of collateral estoppel. Since we have so held, we do not need to decide the second issue. Therefore, petitioners' earned income from the business and from partnerships for *740 purposes of computing the maximum tax in 1977 and 1978 is limited to 30 percent of petitioners' net income from these activities. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and attached exhibits are incorporated herein by this reference. Petitioners, James C. and Carlydia Berry, husband and wife, resided in Georgetown, Tennessee, at the time they filed their petition in this case. Petitioners filed joint Federal income tax returns for 1977 and 1978 with the Internal Revenue Service, Memphis, Tennessee. For 40 years, including the years at issue, Mr. Berry engaged in the business of operating parking facilities. The locations in which Mr. Berry operated his business generally included municipal facilities such as airports and hospitals. *741 During the years at issue, Mr. Berry entered into approximately 37 agreements in which the owners of these facilities granted Mr. Berry exclusive rights to operate their parking facilities. [2] Thirty agreements were entered into with airport facilities and six agreements were entered into with hospital facilities. Most of the agreements provided for improvements to the parking facilities. Thirty-five of the agreements sgrements provided that Mr. Berry was required to pay for all improvements, expansion, maintenance, and repairs to the parking facilities. One agreement provided that Mr. Berry would pay only for maintenance and repairs to the parking facilities. A few of the agreements provided that if the agreement was terminated *2145 prior to the term stated in the agreement, the owner would reimburse Mr. Berry for the cost of the equipment after depreciation or up to a limited amount, such as $ 5,000. Mr. Berry made capital *742 improvements to many of the parking facilities. The capital improvements included the purchase and installation of parking equipment, such as fences, automatic ticket gates, cash registers, ticket booths, and awnings. Many of these improvements are timesaving, laborsaving, and revenue-control devices. Most of the agreements provided that the owner would receive a guaranteed minimum rental payment per month or per year. A typical provision would provide that Mr. Berry would pay the owners the greater of: a certain amount of money per month, such as $ 22,500, or a certain percentage of gross receipts derived from the operation of the parking facility, such as 80 percent of the gross receipts, if the gross receipts for that month are anywhere from zero dollars to $ 450,000; 82.5 percent if the gross receipts for that month are $ 450,001 to $ 550,000; 85 percent if the gross receipts for that month are $550,001 to $ 650,000; and 90 percent if the gross receipts for that month are $ 650,001 or over. Of the 36 agreements, 18 are entitled "Lease Agreements," 6 are "Concession Agreements," 3 are "Lease and Concession Agreements," and 9 are "Agreements." Of the 36 agreements, the earliest *743 one was entered into in 1967, 2 in 1968, 3 in 1969, 1 in 1970, 3 in 1971, 1 in 1972, 4 in 1973, 4 in 1974, 9 in 1975, 6 in 1976, 1 in 1977, and 1 in 1978. Mr. Berry performed many personal services in the operation of his business. Mr. Berry maintained the facilities, obtained insurance, furnished uniformed trained cashiers, collected receipts, provided effective systems for revenue control, provided accounting services, surveyed each facility for traffic flow, and recommended and implemented improved parking facility design. Mr. Berry did not own any of the parking facilities that he operated during the years in issue. The business was a cash flow business with no receivables and no inventory. The total gross receipts were estimated to be $ 6,891,999 for 1977, and $ 8,846,231 for 1978. Petitioners were taxpayers in the refund case of Berry v. United States, an unreported District Court opinion, affd. without published opinion . In our discussion, we will refer to the opinion of the Court of Appeals as Berry I. At the trial of this case, this Court took judicial notice of the opinion of the United States Court of Appeals for the *744 Sixth Circuit and received a certified copy of that opinion into evidence. Rule 143(d). Petitioners did not object to the admission of that opinion into evidence. The sole issue in the refund case was whether capital was a material income-producing factor in Mr. Berry's parking facilities business in 1974, 1975, and 1976. The sole issue on appeal was the validity of the magistrate's [3] determination that capital was a material income-producing factor in Mr. Berry's business within the meaning of sections 911(b) and 1348. The Court of Appeals decided that the factual findings in the opinion of the District Court were not clearly erroneous. The decision of the District Court was affirmed. *745 The Court of Appeals in Berry I noted that this Court has long recognized that "a valuable leasehold constitutes capital," citing , and . The Court of Appeals also pointed out that Mr. Berry invested at least $ 1 million in capital improvements for his parking facilities operations. The Court of Appeals referred to , in which the United States Court of Appeals for the Ninth Circuit noted that other courts have applied the standard that capital is a material income-producing factor "if the operation of the business requires substantial inventories or substantial investments in plant, machinery, or other equipment," referring to this Court in , in which the Court quoted from its opinion in . The Court of Appeals referred to , as support for its position. In this case, *746 of the 36 agreements, all except 2 were executed during or before the period covered by the refund case. The two exceptions are similar in form and content to the other 34 leases. In this case, during the taxable years 1977 and 1978, petitioners reported all of the income from the business as personal service income, subject to taxation at a 50 percent maximum marginal rate under section 1348. In the notice of deficiency, respondent determined that petitioners' earned income from the business and from partnerships for purposes of computing the maximum tax in 1977 and 1978, *2146 was limited to 30 percent of petitioners' net income from these activities since capital is a material income-producing factor in the business. In an amendment to the answer, respondent affirmatively relied upon the doctrine of collateral estoppel to allege that petitioners are estopped to deny that capital was a material income-producing factor in the operation of the business during the taxable years 1977 and 1978. OPINION Respondent contends that petitioners are precluded from arguing that capital is not a material income-producing factor in Mr. Berry's business under the principle of collateral *747 estoppel. Petitioners contend that the controlling facts have changed from those in Berry I and, therefore, collateral estoppel cannot apply. However, we disagree with petitioner. We have compared the facts set out in Berry I with the facts in this case and have concluded that there are no material differences. Collateral estoppel applies in Federal tax cases. . As applied to tax litigation, each year creates a new cause of action even if the issue arises from a continuing transaction. ; , affd. (9th cir. 1990). Where subsequent litigation involves a new cause of action because different tax years are involved, collateral estoppel may be appropriate to preclude redundant litigation if each of the necessary prerequisites is satisfied. . Collateral estoppel precludes parties and their privies from relitigating any issues of fact or law that were necessarily litigated and decided in a final prior judgment by a court *748 of competent jurisdiction. ; ; . Collateral estoppel is an affirmative defense. Respondent bears the burden of proof on affirmative defenses. Rules 39 and 142(a). In , we summarized the conditions necessary for collateral estoppel to apply. First, the issue in the second suit must be identical in all respects with the one decided in the first suit. . Second, there must be a final judgment rendered by a court of competent jurisdiction. . Third, the parties to the second suit must be the same as the parties to the first judgment or in privity with them. . Fourth, the parties must have actually litigated the issues and the resolution of those issues must have been essential to the prior decision. . *749 Finally, the controlling facts and applicable legal rules must remain unchanged from those in the prior litigation. . The first requirement for the application of collateral estoppel is satisfied. The sole issue in this case, whether capital is a material income-producing factor in Mr. Berry's business within the meaning of sections 911(b) and 1348, is the identical issue set forth in Berry I. The second, third, and fourth requirements for the application of collateral estoppel are also satisfied. Petitioners appealed the decision of the District Court and that decision was affirmed by the United States Court of Appeals for the Sixth Circuit. The decision of the Court of Appeals is a final judgment that was rendered by a court of competent jurisdiction. The parties to both proceedings are the same. The parties actually litigated the issue and the resolution of the issue was essential to the prior decision. Petitioners' first argument is that collateral estoppel cannot be applied in this case because the Court does not have a complete record of the prior action and, without a complete record, it is impossible for *750 the Court to determine whether the matters raised in the two cases are identical in all respects. Respondent's counterargument is that the Court has before it the findings of fact and conclusions of law of the United States Court of Appeals for the Sixth Circuit and copies of the parking facilities agreements in effect during the years in issue in this case which provide the Court with the necessary evidence to decide whether or not collateral estoppel applies. We believe the opinion of the Court of Appeals provides the necessary facts of the earlier case to enable us to decide whether or not collateral estoppel applies. We believe the opinion of the Court of Appeals provides the necessary facts of the earlier case to enable us to decide whether or not collateral estoppel is applicable to this case. Petitioners' second argument is that collateral estoppel does not apply in this case because the prior refund case involved the taxable years 1974, 1975, and 1976, while this action applies to taxable years 1977 and 1978. Petitioners argue that the United States Supreme Court in Sunnen established the rule that collateral estoppel cannot apply in tax cases involving different *751 years. Respondent asserts that the United States Supreme Court has not created a rule that collateral estoppel cannot apply in tax cases where different taxable years are involved. Respondent is correct. The United States Supreme Court in Sunnen did not establish such a rule. In Sunnen, the United States Supreme Court stated that when two cases involve income taxes in different taxable years, collateral *2147 estoppel must be confined to situations where the issues raised in the second suit are identical in all respects with the issues decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. . The United States Supreme Court did not decide not to apply collateral estoppel in that case because there were different tax years involved. Instead, the United States Supreme Court decided not to apply collateral estoppel to that case because there had been a significant change in the legal environment. . The United States Supreme Court in Montana limited the application of Sunnen to cases where *752 there has been a significant change in the legal environment. . Petitioners' third argument is that the facts in this case have changed and are separable from the facts in Berry I. Petitioners argue that a significant number of agreements that are in evidence in this case were not in effect for the years in the refund case and that the capital expenditures in this case are significantly less than the expenditures in the refund case. After reviewing the opinion of the Court of Appeals and the testimony and evidence in this case, we believe and have so found that the controlling facts are the same in both cases. Mr. Berry was engaged in the business of operating parking facilities for profit in the years in issue during the refund case and in the years in issue in this case. After reviewing the agreements in evidence, we note that out of the 36 agreements involved in this case, all but two were in force in the refund case. The two new agreements are similar in form and content to the other agreements. One of the new agreements contains a minimum guaranteed rental provision and requires Mr. Berry to make improvements *753 to the parking facility. Mr. Berry provided a summary of the purported capital expenditures made in this case which indicates that expenditures for capital were less in 1977 and 1978 than they were in the years in issue in the refund case. As respondent points out, many of the capital expenditures for equipment made in earlier years continue to be significant for the years in issue here. Therefore, even though the expenditures for equipment for the years in issue in this case are not as great as for the years in issue in this case are not as great as for the years in issue in the refund case, the important facts remain unchanged. The capital investment in equipment is substantial for the years in issue in this case, as it was in the refund case. The only difference between this action and Berry I is the tax years involved. Berry I involved the taxable years 1974, 1975, and 1976. This case involves the taxable years 1977 and 1978. The terms of the leases are essentially the same for all those years. The facts in this case are neither new or separable from Berry I. The controlling facts in this action are the same as those in Berry I. Finally, we hold that the legal principles *754 remain unchanged from those in the refund case. Petitioners also argue that the Commissioner failed to plead the affirmative defense of collateral estoppel until 2 weeks before trial, which constituted a waiver of the defense, and thus, the Commissioner should be barred from litigating the issue. Respondent's counterargument is that respondent properly moved the Court to amend his answer. Respondent is correct. Respondent properly moved to amend his answer. In his amended answer, he affirmatively alleged that petitioners were collaterally estopped from claiming that capital is not a material income-producing factor in the business, pursuant to Rule 39. All the requirements for collateral estoppel to apply are satisfied. Therefore, we conclude that collateral estoppel applies to this case to preclude petitioners from claiming that capital is not a material income-producing factor in Mr. Berry's business. Since we have so held, we do not need to decide the second issue. Respondent is, therefore, correct that a maximum of 30 percent of the income from the business may be considered earned income for purposes of section 1348. Decision will be entered for the respondent *755 . Footnotes
1. Except as otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Thirty-six agreements were admitted into evidence and are discussed herein.↩
3. The case was tried without a jury before Judge Frank W. Wilson. Unfortunately, Judge Wilson died prior to entering findings of fact and conclusions of law in the case. The parties consented to United States Magistrate Roger W. Dickenson's deciding the case based on the trial transcript and the deposition of Mr. Berry.↩